IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────

TROY JOHNSON,

                              Plaintiff,

                                              Civil Action No.
               vs.                            9:06-CV-0431 (GTS/DEP)

R. McCLURE, et al.,

                        Defendants.

─────────────────────────────────

APPEARANCES:                      OF COUNSEL:

FOR PLAINTIFF:

TROY JOHNSON, *Pro Se*
98-A-2072
Attica Correctional Facility
P.O. Box 149
Attica, NY 14011

FOR DEFENDANTS:

HON. ANDREW M. CUOMO          CHRISTOPHER W. HALL, ESQ.
Office of Attorney General    Assistant Attorney General
State of New York
The Capitol
Litigation Bureau
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Troy Johnson, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this action pursuant to 42 U.S.C. § 1983 against the State of New York and the New York State Department of Correctional Services ("DOCS"), together with its former commissioner and several other DOCS' employees, alleging deprivation of his civil rights.  Plaintiff's claims, though wide-ranging, center upon defendants' actions subsequent to his attempt at suicide on January 9, 2004.  Plaintiff maintains that following that attempt he was beaten on multiple occasions by corrections officers, denied adequate medical care, and deprived of procedural due process during the course of an ensuing disciplinary hearing.  Plaintiff's complaint asserts fifteen distinct causes of action under the First, Eighth and Fourteenth Amendments to the United States Constitution, as well as based upon New York common law, and requests both injunctive and monetary relief.

Currently pending before the court is a motion brought by defendants seeking summary judgment dismissing plaintiff's claims.  In support of their motion, defendants assert that certain of plaintiff's causes of action are precluded based upon a prior, adverse determination by the

2

New York State Court of Claims, and that the balance of his claims are subject to dismissal, both procedurally based upon his failure to exhaust available administrative remedies, and on the merits.  For the reasons set forth below, I recommend that defendants' motion be granted.

I.     BACKGROUND[1]

Plaintiff is a prison inmate entrusted to the care and custody of DOCS.  *See generally* Amended Complaint (Dkt. No. 5).  At all times relevant to his claims, Johnson was designated to the Great Meadow Correctional Facility ("Great Meadow"), located in Comstock, New York. *Id.*

Plaintiff's claims have as their genesis an attempt on January 9, 2004 to commit suicide by cutting his wrists and forearms.  Amended Complaint (Dkt. No. 5) ¶ 32.  Following the incident, plaintiff was taken to the prison infirmary where he was seen by Cheryl Van Tassel, a registered nurse, who inserted an intravenous catheter into his right arm,

---

[1]     In light of the procedural posture of the case the following recitation is derived from the record now before the court, with all inferences drawn, and ambiguities resolved, in favor of plaintiff.  *See Wells-Williams v. Kingsboro Psychiatric Ctr.*, No. 03-CV-134, 2007 WL 1011545, at *2 (E.D.N.Y. Mar. 30, 2007) (citations omitted).  It should be noted, however, that in large part plaintiff's allegations are sharply contested by the defendants.

and cleaned and wrapped his wounds pending the arrival of Ted Nesmith, a physician's assistant ("PA") who was off duty at the time, to treat Johnson's lacerations.  Nesmith Aff. (Dkt. No. 65-3) ¶¶ 7-14.  Upon his arrival at the prison affirmary, PA Nesmith closed plaintiff's wounds, applying sixty-five stitches to do so.  *Id.*

At some point during the course of plaintiff's stay in the prison infirmary on that date, force was exerted by corrections officers against the plaintiff.  Amended Complaint (Dkt. No. 5) ¶¶ 36-42; Nesmith Aff. (Dkt. No. 65-3) ¶¶ 15-17.  While defendant Nesmith attributes the use of force to plaintiff's belligerence, *see* Nesmith Aff. (Dkt. No. 65-3) ¶ 16, plaintiff counters that the beatings he received, initially at the hands of defendants Michael, Rozell, McNally and Griffen, and later on that same date from defendants Clark, McClure, Gille, Vladyka, Kirkley, and Carlton, were unprovoked.  Amended Complaint (Dkt. No. 5) ¶¶ 36-42.  As a result of the use of force plaintiff suffered further injuries, including a one and one-half inch laceration on his forehead, burns to the bottom of his right foot and ankle, and a contusion on his lower chest.  Amended Complaint (Dkt. No. 5) ¶¶ 41-47; Nesmith Aff. (Dkt. No. 65-3) ¶ 20.  Plaintiff's head laceration was sutured by PA Nesmith, utilizing twelve stitches, and he

4

was thereafter taken to the facility's mental health unit in accordance with standard protocol based upon his suicide attempt.  *Id.* ¶¶ 21-23.

As the result of the events of January 9, 2004, plaintiff was issued two misbehavior reports.  *See* Hall Aff. (Dkt. No. 65-6) Exh. 6.  The first, dated January 9, 2004, was issued by Corrections Officer R. L. Brooks, charged Johnson with inflicting bodily harm upon himself and possession of an altered item.  The second, also dated January 9, 2004 and issued by Corrections Officer T. Griffen, accused Johnson of assaulting staff, engaging in violent conduct, and refusing to obey a direct order.  *Id.*

A Tier III disciplinary hearing was conducted to address the charges set forth in those two misbehavior reports, beginning on January 23, 2004 and continuing to February 2, 2004.[2]  Hall Aff. (Dkt. No. 65-5) Exh. 6. Presiding at the hearing was Andrew Harvey, a designated Commissioner's Hearing Officer.  *Id.*  At the close of that proceeding, the hearing officer found plaintiff guilty on each of the counts alleged and

---

[2]        DOCS conducts three types of inmate disciplinary hearings.  Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit ("SHU").  Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits.  *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998).

imposed a penalty of three hundred sixty-five days of disciplinary

confinement in a facility SHU with a corresponding loss of packages,

commissary and telephone privileges and a recommendation that plaintiff

forfeit six months of good time credits.[3]  *Id.*  That penalty was later

modified on April 7, 2004 by defendant Donald Selsky, Director of the

DOCS Special Housing/Inmate Disciplinary Program, resulting in

reduction in the designated length of SHU confinement and lost privileges

from three hundred sixty-five to two hundred and forty days.  *Id.* Exh. 7.

II.   PROCEDURAL HISTORY

    A.   State Court Proceedings

On or about January 3, 2005, plaintiff commenced a proceeding in

the New York Court of Claims based upon the occurrences on January 9,

2004 and the events that followed.  Hall Aff. (Dkt. No. 65-6) Exh. 2.  In that

claim, plaintiff alleged that he was subjected to excessive force on that

date, and that defendants failed to properly treat his resulting injuries.

Following a trial held on March 6, 2007, Court of Claims Judge Francis T.

Collins issued a decision dated May 10, 2007 dismissing plaintiff's claim.

---

[3]      While in their motion defendants assert that plaintiff suffered an
actual loss of good time credits as a result of the hearing officer's decision, from
the record it appears that at the time he had none available to forfeit.  *See* Hall Aff.
(Dkt. No.65-6) Exh. 6 at p. 46.

*Id.* Exh. 1.  In his decision, Judge Collins, concluded that the degree of
force exerted by prison officials on the date in question "was necessary
and reasonably required to control the claimant and secure the safety of
those in the room."  *Id.*, Exh. 1 at 10.  The court also rejected plaintiff's
medical claim, based upon the lack of expert testimony.  *Id.* There is no
indication in the record that plaintiff appealed that unfavorable
determination.

In his complaint, as amended, plaintiff also claims to have
commenced multiple proceedings pursuant to Article 78 of the New York
Civil Practice Law and Rules ("CPLR") in the New York state courts
arising out of the relevant events.  Amended Complaint (Dkt. No. 5) ¶¶ 51,
57.  The first, commenced in Albany County, resulted in a decision by
Supreme Court Justice Edward A. Sheridan on January 27, 2005,
directing that DOCS either provide plaintiff with a copy of the recording of
his disciplinary hearing or reverse the hearing officer's determination and
expunge the matter from his disciplinary record.  *Id.* ¶ 51.  Little more is
known about plaintiff's Article 78 proceedings, other than that the filing of
two separate, additional Article 78 petitions resulted in awards of costs
against plaintiff in the total amount of $125 and the deduction of $100

pursuant to those determinations from Johnson's inmate account, without his authorization.[4]  *Id.* ¶ 53.

B.    This Action

Plaintiff commenced this action on April 5, 2006, and, at the court's directive, later filed an amended complaint, the operative pleading currently before the court, on May 8, 2006.  Dkt. Nos. 1, 5.  As defendants, plaintiff's amended complaint names the State, DOCS, former DOCS Commissioner Glenn S. Goord; Donald Selksy, DOCS Director of Special Housing/Inmate Disciplinary Program; Mr. Turner, identified as the acting First Deputy Superintendent at the Clinton Correctional Facility; a clerk in the business office at Clinton, identified only as "N.C.", Dr. Shemkunis, a psychiatrist employed by the New York State Department of Mental Health; various corrections workers stationed at Great Meadow, including Corrections Officers R. McClure, J. Rozell, P. McMally, R. Clark, J. Gille, Prevost, R. Vladyka, Keogh, Carlton, Green, and Harvey; Corrections Sergeants Michael and Kirkley; Corrections Captain T. Griffen; and F. Nesmith, a physicians' assistant employed by DOCS and assigned to work at Great Meadow.  Plaintiff's complaint asserts fifteen

---

[4]    Neither the Johnson nor defendants have provided the court with any documents regarding plaintiff's Article 78 proceedings.

separate causes of action, and requests both injunctive relief and a monetary damage award in the amount of $1,603,500.

Following joinder of issue and completion of pretrial discovery, defendants moved on June 2, 2008 for summary judgment dismissing plaintiff's claims on a variety of grounds, both procedural and on the merits.  Dkt. No. 65.  Defendants' motion, which is opposed by plaintiff, *see* Dkt. No. 71, is now fully briefed and ripe for determination, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

A moving party seeking summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion.  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions,

they must establish more than mere "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  Summary judgment is warranted only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party.  *See Building Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.    Issue Preclusion

In their motion, defendants assert that by virtue of the adverse decision rendered in connection with plaintiff's Court of Claims proceeding

arising from the events of January 9, 2004 and those which followed, he is precluded from relitigating the questions of whether defendants applied excessive force, and whether prison officials at Great Meadow were deliberately indifferent to his medical needs.  In response, plaintiff asserts that he did not have a full and fair opportunity to litigate those issues in the Court of Claims in light of his inability to afford reproduction of the record for purposes of appealing that court's ruling and his contention that poor person status is unavailable in connection with cases brought in that court.  Plaintiff also maintains that the Court of Claims determination regarding malpractice does not translate well in the medical indifference setting since distinctly different standards apply to the two types of claims, and that the adverse ruling on that claim therefore does not bind this court.

Both the Full Faith and Credit Clause of the United States Constitution, *see* U.S. Const. art. IV, § 1, and the corresponding Full Faith and Credit statute, 28 U.S.C. § 1738, require that a federal court accord a state court judgment the same preclusive effect which it would merit under the law of the state from which it originated.  *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892, 896 (1984);

*Kremer Chem. Constr. Corp.*, 456 U.S. 461, 466, 102 S. Ct. 1883, 1889-90 (1982); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).  This principle applies fully to claims brought pursuant to 42 U.S.C. § 1983. *Migra*, 465 U.S. at 84-85, 104 S. Ct. at 897-98; *Allen v. McCurry*, 449 U.S. 90, 103-04, 101 S. Ct. 411, 419-20 (1980); *Giakoumelos v. Coughlin*, 88 F.3d 56, 59 (2d Cir. 1996).  Since the underlying state court determination at issue in this case originated in New York, the law of that state controls in determining the extent of the preclusive effect of which the adverse Court of Claims determination is deserving.[5]  *Giakoumelos*, 88 F.3d at 59; *see also Marvel,* 310 F.3d at 286; *LaFleur v. Whitman*, 300 F.3d 256, 271-72 (2d Cir. 2002).

        1.    <u>Claim Preclusion</u>

As the Second Circuit explained in *Marvel*, claim preclusion, also known as *res judicata*, requires that a final judgment on the merits of an action be given preclusive effect, barring parties as well as those in privity with them from relitigating in a subsequent action a claim which was or

---

[5]     While the law of New York, rather than federal principles, applies to determine the preclusive effect to be given to the state courts' determination, this is a distinction without a difference since, as the Second Circuit has noted, "there is no discernable difference between federal and New York law concerning *res judicata* and collateral estoppel."  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citing *Pike v. Freeman,* 266 F.3d 78, 90 n.14 (2d Cir. 2001)).

could have been raised in the prior suit.  310 F.3d at 286-87; *see also Fay v. South Colonie Cent. Sch. Dist.*, 802 F.2d 21, 28 (2d Cir. 1986) (citing, *inter alia*, *Migra,* 465 U.S. at 85, 104 S .Ct. at 898), *overruled on other grounds, Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768 (2d Cir. 2002). Defendants do not urge claim preclusion in support of their motion, in apparent recognition of the fact that "[s]ince the Court of Claims does not have jurisdiction to hear claims against state officials in their individual capacities, . . . courts have held that a later suit asserting claim [sic] against individuals is not barred by res judicata."  *Cox v. C.O. Colgane*, No. 94 Civ. 6361 (DAB), 1998 WL 148424 at * 4 (S.D.N.Y. March 26, 1998) (collecting cases); *see also Sheils v. Busse*, No. 9:05-CV-399 (FJS/DRH), 2008 WL 877189 at *2 (N.D.N.Y. March 31, 2008).

              2.     Issue Preclusion

     Issue preclusion, a more narrow doctrine often referred to as collateral estoppel, bars a party that has had a full and fair opportunity to litigate an issue of fact or law from relitigating the same issue once it has been decided against that party or its privy.  *McKithen v. Brown*, 481 F.3d 89, 105 (2d Cir. 2007); *Marvel*, 310 F.3d at 288-89.  Under New York law, in order for issue preclusion to apply two elements must be satisfied; first,

the issue must both "actually and necessarily" have been decided in a prior proceeding, and secondly, the party against whom the doctrine is being urged must have been afforded a full and fair opportunity to litigate the issue in the first proceeding.  *McKithen*, 481 F.3d at 105; *see also Giakoumelos*, 88 F.3d at 59; *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995).

Advocating against application of issue preclusion, plaintiff asserts that he did not have a full and fair opportunity to litigate his excessive force and medical claims in state court since he was denied the opportunity to appeal from the adverse Court of Claims determination. "To determine whether the first action provided a full and fair opportunity to litigate requires consideration of:

> the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation."

*Shell v. Brun*, 362 F.Supp. 2d 398, 400 (W.D.N.Y. 2005)(quoting *Ryan v. N.Y. Telephone Co.,* 62 N.Y.2d 500, 501, 478 N.Y.S.2d 823 (1984)). Applying these factors to present the circumstances, I find that application of the doctrine of collateral estoppel is justified.

15

It is true, as plaintiff argues, that a party's inability to obtain meaningful  appellate review of a determination claimed to be preclusive can provide a basis to find that he or she did not have a full and fair opportunity to litigate the claim under consideration, and that accordingly, issue preclusion should not be invoked.  *Jenkins v. City of New York,* 478 F.3d 76, 91 (2d Cir. 2007).  In this case, however, plaintiff's assertion that he was unable to pursue an appeal is not well-taken.  The laws of New York provide for an appeal as a matter of right from an adverse Court of Claims determination.  N.Y. Court of Claims Act § 25 (McKinney's 1989); *see also* N.Y. Civ. Prac. Law & Rules §§ 5513 and 5515 (McKinney's 1997).  New York law also affords a party to any state court proceeding or appeal the opportunity to seek permission to proceed as a poor person. *See* N.Y. Civ. Prac. Law & Rules § 1101 (McKinney's 1997).  Plaintiff's apparent decision not to appeal from the Court of Claims determination thus poses no impediment to its being accorded preclusive effect in this action.

Finding that collateral estoppel is available as a defense in this action, I must next compare plaintiff's claim and the resulting Court of Claims determination from the state court proceeding with his complaint in

this action to determine the pivotal question of whether there exists identity of issues in the two matters.  Under New York law, "[t]o show an identity of issue, 'the issue must have been material to the first action or proceeding and essential to the decision rendered there . . . and it must be the point actually to be determined in the second action or proceeding such that a different judgment in the second would destroy or impair rights or interests established by the first.'" *Shell*, 362 F.Supp. 2d at 400 (quoting *Ryan,* 62 N.Y.2d at 500-01).

In its decision regarding  Johnson's claim, the New York Court of Claims framed the issue presented as whether: 1) excessive force was used against Johnson by corrections officers at Great Meadow on January 9, 2004, the matter having been regarded by the court as presenting a common law assault and battery claim, and 2) medical malpractice was established, based upon the alleged failure of state employees to properly treat his injuries.  *See* Hall Aff. (Dkt. No. 65-6) Exh. 1 at p.1.  After reviewing the evidence adduced at trial, Court of Claims Judge Frances T. Collins found that "[t]he evidence in this case leads the court to the conclusion the degree of force used was necessary and reasonably required to control the claimant and secure the safety of those in the room

[with him at the time]." *Id.*, Slip Op. at 10.  Judge Collins went on to conclude that plaintiff's claim for medical malpractice was subject to dismissal based upon his failure to offer expert testimony to establish a deviation from the applicable standard of care.  *Id.* Slip Op. at 11.

Although intellectually distinct, plaintiff's excessive force cause of action in this action is closely congruent to the assault and battery claims raised by him in the Court of Claims.  *See Shell*, 362 F. Supp.2d at 401.  In addressing the excessive force claim the court was required to strike a balance similar to that applicable under Eighth Amendment jurisprudence applicable excessive force claims, considering the nature and extent of the force applied, as well as the need for taking such measures.  The court's very specific finding regarding the need for and reasonableness of the force applied precludes relitigation of that issue in this forum.

A somewhat closer question is presented with regard to plaintiff's deliberate medical indifference claims since the state court's determination did not come following a robust presentation of competing expert opinions, but instead was the result of the failure of plaintiff to offer at trial expert evidence in support of his claim.  A finding on the merits adverse to the plaintiff on his malpractice claim clearly would preclude

litigation in this action of his deliberate indifference cause of action,

particularly since the standard for supporting an Eighth Amendment

medical indifference claim is considerably more stringent than the more

relaxed malpractice standard.  See *Estelle v. Gamble,* 429 U.S. 97, 105-

106, 97 S. Ct. 285, 292 (1976).

Again, applying the criteria for determining whether plaintiff had a full

and fair opportunity to litigate results in my concluding that he did.

Although the nature of a common law negligence claim is different than a

federal civil rights action, there is clear identity of the issues warranting

the application of collateral estoppel under the circumstances.  *Shell v.*

*Brun*, 362 F.Supp. 2d 401.  In the Court of Claims, plaintiff asserted

medical malpractice based upon the treatment of his injuries following the

beating, including the presence of blood in his urine.  That claim was

therefore based upon the same occurrences, and was directed toward the

same failure of treatment, as the medical indifference cause of action

asserted in this matter.  The Court of Claims rejected plaintiff's medical

malpractice claims as a result of his failure to adduce expert medical

testimony that the care and treatment that he received deviated from

accepted standards in the medical community.  *See* Hall Aff. (Dkt. No. 65-

6) Exh. 1 at p. 11.

The prior action was brought in the Court of Claims by plaintiff, who clearly had an incentive to vigorously litigate and present evidence demonstrating medical malpractice in effort to prevail and secure an award of compensatory damages.  The prior action was adjudicated in the context of a formal proceeding, with the presentation of testimony and evidence at trial.  Plaintiff filed this action more than a year before the trial in the Court of Claims, on March 6, 2007, so the impact of his failure to present proof of his claims in that court on this action was foreseeable.

Plaintiff testified and offered evidence in the Court of Claims trial, including regarding his medical treatment.  Based upon the evidence adduced by plaintiff at trial, and in particular his failure to offer expert testimony, the Court of Claims determined that plaintiff had failed to prove that the defendants were medically negligent.  Plaintiff offers no explanation as to why he failed to produce a medical expert to establish his medical malpractice claim in the Court of Claims.   In addition, plaintiff offers no new evidence that might warrant relitigation of his medical claims in this court, and the mere fact that he proceeded *pro se* in the Court of Claims "is not reason enough to allow plaintiff a second bite of the apple

in federal court." *Shell*, 362 F. Supp. 2d at 402 (citations omitted).  In view of the foregoing, I conclude that plaintiff had a full and fair opportunity to litigate the issue of his medical treatment, and that the issue was actually determined by the Court of Claims based upon the evidence produced at trial.  I therefore find that plaintiff is also barred in this action from litigating his medical indifference claim.

  C. <u>Deliberate Indifference</u>

  In his complaint, *inter alia*, plaintiff accuses defendant Nesmith of being deliberately indifferent to his medical needs, causing him unnecessary pain when repairing his self-inflicted wounds, ignoring complaints of blood in his urine and removing indications of those complaints from his medical records, and falsely accusing Johnson of "malingering".  *See* Amended Complaint (Dkt. No. 5) ¶¶ 35-36, 47-48. Defendants maintain that even if not barred by claim preclusion, plaintiff's deliberate indifference cause of action is legally deficient as a matter law on the merits.

  Claims that prison officials have intentionally disregarded an inmate's medical needs fall within the purview of the Eighth Amendment's prohibition of cruel and unusual punishment, which encompasses

21

punishments that involve the "unnecessary and wanton infliction of pain"

and are incompatible with "the evolving standards of decency that mark

the progress of a maturing society."  *Estelle,* 429 U.S. at 102, 104, 97 S.

Ct. at 290, 291; *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct.

1076, 1084 (1986) (citing, *inter alia, Estelle*).  While the Eighth

Amendment does not mandate comfortable prisons, neither does it

tolerate inhumane treatment of those in confinement; thus the conditions

of an inmate's confinement are subject to Eighth Amendment scrutiny.

*Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994)

(citing, *inter alia*, *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct.

2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment

must satisfy both an objective and subjective requirement – the conditions

must be "sufficiently serious" from an objective point of view, and the

plaintiff must demonstrate that prison officials acted subjectively with

"deliberate indifference".  *See Leach v. Dufrain,* 103 F. Supp. 2d 542, 546

(N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S.

Ct. 2321, 2324 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL

713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.); *see*

*also, generally, Wilson*, 501 U.S. 294, 111 S. Ct. 2321.

      1.    <u>Serious Medical Need</u>

In order to state a medical indifference claim under the Eighth Amendment, a plaintiff must first allege a deprivation involving a medical need which is, in objective terms, "'sufficiently serious'".  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (quoting *Wilson*, 501 U.S. at 298, 111 S. Ct. at 2324), *cert. denied sub nom.*, *Foote v. Hathaway*, 513 U.S. 1154, 115 S. Ct. 1108 (1995).  A medical need is serious for constitutional purposes if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain'."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citations omitted).  A serious medical need can also exist where "'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain'"; since medical conditions vary in severity, a decision to leave a condition untreated may or may not be unconstitutional, depending on the facts.  *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000) (quoting, *inter alia*, *Chance*, 143 F.3d at 702).  Relevant factors informing this determination include whether the plaintiff suffers from an injury that a "'reasonable doctor or patient would find important and worthy of comment

or treatment'", a condition that "'significantly affects'" a prisoner's daily activities, or "'the existence of chronic and substantial pain.'" *Chance*, 143 F.3d at 701 (citation omitted); *LaFave v. Clinton County*, No. CIV. 9:00CV774, 2002 WL 31309244, at *3 (N.D.N.Y. Apr. 3, 2002) (Sharpe, M.J.) (citation omitted).

In their motion, defendants do not argue that at the relevant times plaintiff did not present to medical officials at Great Meadows with a serious medical need.

### 2.    Deliberate Indifference

In addition to establishing the existence of a serious medical need, to prevail on an Eighth Amendment claim a plaintiff must also establish indifference to that condition on the part of one or more of the defendants. *Leach*, 103 F. Supp. 2d at 546.  Deliberate indifference, in a constitutional sense, exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Leach*, 103 F. Supp. 2d at 546 (citing *Farmer,* 511 U.S. at 837, 114 S. Ct. at 1979); *Waldo*, 1998 WL 713809, at *2 (citations

omitted).

It should be noted that the Eighth Amendment does not afford prisoners a right to medical treatment of their choosing; the question of that diagnostic techniques and treatments should be administered to address an inmate's medical condition is a "classic example of a matter for medical judgment" and, accordingly, prison medical personnel are vested with broad discretion to determine what method of care and treatment to provide to their patients. *Estelle*, 429 U.S. at 107, 97 S. Ct. at 293; *Chance*, 143 F.3d at 703 (citation omitted); *Rosales v. Coughlin*, 10 F. Supp. 2d 261, 264 (W.D.N.Y. 1998) (citation omitted).

The record now before the court fails to substantiate plaintiff's claims of deliberate indifference.  The principal thrust of plaintiff's indifference claim against PA Nesmith appears to relate to his alleged failure to note all of the injuries stemming from the January 9, 2004 incident in his medical records.  *See, e.g.,* Johnson Aff. (Dkt. No. 71-2) ¶¶ 22-29.  Conspicuously absent from plaintiff's affidavit, however, is the claim that he did not receive proper medical treatment from defendant Nesmith for Johnson's injuries.  Indeed, plaintiff's medical records and the evidence now before the court reflect otherwise.  Plaintiff initially

presented to the Great Meadow clinic on January 9, 2004 with multiple deep lacerations in both arms.  Nesmith Aff. (Dkt. No. 65-3) ¶ 8 and Exhs. 1, 2.  After administering a local anesthesia PA Nesmith closed plaintiff's wounds utilizing sixty-five stitches.  *Id.* ¶ 11.  A forehead laceration incurred later that day was also sutured by PA Nesmith.  *Id.* ¶¶ 20-21. Following the January 9, 2004 incident plaintiff continued to receive significant treatment for his injuries.  On January 13, 2004, four days after the attempted suicide, it was noted that plaintiff's wounds were healing well, and he had requested that the stitches be removed.  Nesmith Aff. (Dkt. No. 65-3) ¶ 27, Exh. 1.

A review of plaintiff's available medical records fails to reveal any denial of medical care and indifference to his needs.  In addition to the suturing of the wounds inflicted upon himself on January 9, 2004, as well as those suffered during the ensuing encounter with corrections officers, PA Nesmith and others at the facility tended to various of his medical complaints, including blood in his urine, which after testing was attributed to a possible "ordinary urinary tract infection", *see* Nesmith Aff. (Dkt. No. 65-3) ¶¶ 90-92, and others.  Under these circumstances no reasonable factfinder could conclude that defendant Nesmith and other medical

officials at Great Meadow were subjectively indifferent to plaintiff's medical needs.  I therefore recommend dismissal of this cause of action.

    D.    <u>Failure To Exhaust</u>

In addition, in his first cause of action, which alleges excessive force arising out of the January 9, 2004 incident, plaintiff interposes four additional claims stemming from that event, including his second cause of action, which alleges that the beating was in retaliation for protected activity; a third cause of action, which alleges the issuance of false memoranda and reports concerning the incident; a fourth, which asserts a claim against certain supervisory defendants for failure to properly train corrections officers; and a fifth, alleging that corrections officers not directly participating in the beating failed to protect him from harm.  *See* Amended Complaint (Dkt. No. 5) ¶¶ 63-66.  Defendants seek dismissal of these claims, arguing that they are unexhausted.

With an eye toward "reduc[ing] the quantity and improv[ing] the quality of prisoner suits[,]"  *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 988 (2002), Congress altered the inmate litigation landscape considerably through the enactment of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), imposing

several restrictions on the ability of prisoners to maintain federal civil rights actions.  An integral feature of the PLRA is a revitalized exhaustion of remedies provision which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S. Ct. 2378, 2382 (2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *5-6 (E.D.N.Y. Jan. 31, 2007).  This limitation is intended to serve the dual purpose of affording "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into courtl[,]" and to improve the quality of inmate suits filed through the production of a "useful administrative record."  *Jones v. Bock,* 549 U.S. 199, 204, 127 S. Ct. 910, 914-15 (2007) (citations omitted); *see Woodford,* 548 U.S. at 91-92, 126 S. Ct. at 2386; *see also Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir. 2004).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter*, 534 U.S. at 532, 122

28

S. Ct. at 992 (citation omitted).

The failure of a prisoner to satisfy the PLRA's exhaustion requirement is not jurisdictional, but instead gives rise to a defense which must affirmatively be raised by a defendant in response to an inmate suit. *Jones,* 127 S. Ct. at 918.  In the event a defendant named in such an action establishes that the inmate plaintiff failed properly to exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal.  *See Pettus v. McCoy*, No. 04-CV-0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford*, 548 U.S. at 94-95, 126 S. Ct. at 2387-88 (holding that the PLRA requires "proper exhaustion" of available remedies).  "Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules."  *Woodford*, 548 U.S. at 95, 126 S. Ct. at 2388; *see also Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) (citing *Woodford*).  While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substantive sense", an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his or her available administrative remedies within the appropriate grievance construct in order to satisfy the

PLRA. *Macias*, 495 F.3d at 43 (quoting *Johnson*, 380 F.3d at 697-98) (emphasis omitted).

In a series of decisions rendered since the enactment of the PLRA, the Second Circuit has crafted a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted for failure to satisfy the PLRA's exhaustion requirement.[6] *Macias*, 495 F.3d at 41; *see Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir. 2004). Under the prescribed algorithm, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686. If such a remedy existed and was available, the court must next examine whether the defendants have forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it or whether, through their own actions preventing the exhaustion of plaintiff's remedies, they should be estopped from asserting failure to exhaust as a defense. *Macias*, 495 F.3d at 41; *Hemphill*, 380 F.3d at 686. In the event the proffered defense survives these first two levels of scrutiny, the court lastly must examine whether special

_____

[6]      Whether the *Hemphill* test survives following the Supreme Court's decision in *Woodford*, has been a matter of some speculation. *See, e.g.*, *Newman v. Duncan,* NO. 04-CV-395, 2007 WL 2847304, at * 2 n.4 (N.D.N.Y. Sept. 26, 2007) (McAvoy, S.J. and Homer, M.J.) .

circumstances nonetheless exist and "have been plausibly alleged" to justify the plaintiff's failure to comply with the applicable administrative procedural requirements.[7]  *Macias*, 495 F.3d at 41; *Hemphill*, 380 F.3d at 686.

>            a)    Availability of Remedy

New York prison inmates are subject to an Inmate Grievance Program ("IGP") established by the DOCS and recognized as an "available" remedy for purposes of the PLRA.  *See Mingues v. Nelson*, No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson*, 351 F.3d 606 (2d Cir. 2003) and *Snider v. Melindez*, 199 F.3d 108, 112-13 (2d Cir.1999)).  The IGP consists of a three-step review process.  First, a written grievance is submitted to the Inmate Grievance Review Committee ("IGRC") within twenty-one days of the incident.[8]  7 N.Y.C.R.R. § 701.5(a).  The IGRC, which is comprised of inmates and facility employees, then issues a determination regarding the grievance.  *Id.* §§ 701.4(b), 701.5(b).  If an appeal is filed, the

---

[7]    In practicality these three prongs of the prescribed test, though perhaps intellectually distinct, plainly admit of significant overlap.  *See Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *8 n.14 (E.D.N.Y. Jan. 31, 2007); *see also Giano v. Goord*, 380 F.3d 670, 677 n.6 (2d Cir. 2004).

[8]    The IGP supervisor may waive the grievance timeliness requirement due to "mitigating circumstances."  7 N.Y.C.R.R. § 701.6(g)(1)(i)(a)-(b).

superintendent of the facility next reviews the IGRC's determination and issues a decision.  *Id.* § 701.5(c).  The third level of the process affords the inmate the right to appeal the superintendent's ruling to the Central Office Review Committee ("CORC"), which makes the final administrative decision.  *Id.* § 701.5(d).  Ordinarily, absent the finding of a basis to excuse non-compliance with this prescribed process, only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to section 1983 in a federal court.  *Reyes v. Punzal*, 206 F. Supp. 2d 431, 432 (W.D.N.Y. 2002) (citing, *inter alia*, *Sulton v. Greiner*, No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

Despite an inmate's entitlement in most instances to file and pursue a grievance in accordance with the IGP, there are circumstances under which the grievance procedure nonetheless is deemed not to have been available to an inmate plaintiff.  *See Hemphill*, 380 F.3d at 687-88.  Thus, for example, "[e]xhaustion may be considered unavailable in situations where plaintiff is unaware of the grievance procedures or did not understand it, . . . or where defendants' behavior prevents plaintiff from seeking administrative remedies."  *Hargrove,* 2007 WL 389003, at *8 (citations omitted) (noting, for example, that a defendant's failure to

advance plaintiff's grievances or the issuance of threats against an inmate to deter the filing of a grievance may effectively render the administrative process unavailable).  When testing the availability of administrative remedies in the face of claims that undue influence from prison workers has caused a plaintiff inmate to forego the formal grievance process, courts employ an objective test, examining whether "a similarly situated individual of ordinary firmness [would] have deemed them available."  *Id.* at 688 (quotations and citations omitted); *see Hargrove,* 2007 WL 389003, at *8.

### b)   Presentation of Defense/Estoppel

The second prong of the *Hemphill* analysis focuses upon "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."  *Hemphill,* 380 F.3d at 686 (citations omitted).

### c)   Special Circumstances

The third, catchall factor to be considered under the Second Circuit's prescribed exhaustion rubric focuses upon whether special

circumstances have been plausibly alleged which, if demonstrated, would justify excusing a plaintiff's failure to exhaust administrative remedies. *Hemphill,* 380 F.3d at 689; *see also Giano v. Goord,* 380 F.3d 670, 676-77 (2d Cir. 2004); *Hargrove,* 2007 WL 389003, at *10.  Among the circumstances potentially qualifying as "special" under this prong of the test include where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials and leads him or her to conclude that the dispute is not grievable. *Giano*, 380 F.3d at 676-77; *see also Hargrove,* 2007 WL 389003, at *10 (quoting and citing *Hemphill*, 380 F.3d at 688).

The record now before the court discloses Johnson's filing of only four appeals to the CORC in 2004 arising out of grievances lodged at Great Meadow.  Bellamy Aff. (Dkt. No. 65-4) ¶¶ 6-7 and Exh. A.  In the first, No. GM-35556-04, plaintiff complained of having to pull stitches out of his wounds himself on January 9, 2004 because they had become infected.  *Id.* ¶ 8 and Exh. B.  The second, No. GM-35611-04, is comprised of three consolidated grievances including one complaining of the assault on January 9, 2004 and another alleging that the grievance filed on January 17, 2004 concerning the incident was ignored.  *Id.* ¶ 9

and Exh. C.  Plaintiff's third grievance, no. GM-35756-04, centered upon

the claim that plaintiff had not received copies of his medical records,

despite requesting them.  *Id.* ¶ 10 and Exh. D.  In the last, no. GM-35914-

04, plaintiff complained of the IGRC's determination related to his second

grievance, focusing on the January 9, 2004 incident and requesting that it

be heard on the merits.[9]  *Id.* ¶ 11 and Exh. E.

Careful review of plaintiff's grievances reveals that while some of

them do relate generally to the January 9, 2004 incident, none include

plaintiff's claim that the incident was in retaliation for protected activity, nor

do they relate to the alleged falsification of records concerning the matter.

Similarly, none of those grievances assert a lack of training on the part of

supervisory employees, nor do they raise claims of failure to protect the

plaintiff from harm.  Under these circumstances plaintiff's second, third,

fourth and fifth causes of action are subject to dismissal, as a matter of

law, for failure to properly exhaust available administrative remedies.

E.    *Edwards v. Balisok*

---

[9]      Plaintiff filed another grievance while at Great Meadow, no. GM-
35986-04, complaining that prison staff members impeded his efforts to file and
pursue grievances regarding the assault, and failed to apprise him of the results of
an investigation into the matter.  White Aff. (Dkt. No. 65-5) ¶¶ 5-6 and Exh. B.
Plaintiff did not appeal to the CORC from the facility level determination in
connection with that fifth grievance.  *Id.*

Plaintiff's sixth and seventh causes of action claim deprivation of procedural due process growing out of a disciplinary proceeding held to address misbehavior reports issued to the plaintiff as a result of the January 9, 2004 incident.  Amended Complaint (Dkt. No. 5) ¶¶ 67-68. Relying principally upon *Edwards v. Balisok*, 520 U.S. 641, 117 S. Ct. 1584 (1997) and its progeny, defendants contend that those claims are subject to dismissal based upon Johnson's failure to demonstrate that he successfully challenged the hearing result in another forum before proceeding in this action.

In *Balisok*, the Supreme Court held that a claim for damages for a violation of procedural due process in the context of a prison disciplinary hearing is not cognizable under section 1983 where the nature of the challenge to the procedures followed necessarily implies the invalidity of the resulting judgment and/or punishment imposed, unless the disciplinary disposition has already been reversed through a state administrative or judicial proceeding or a habeas proceeding.  *Balisok*, 520 U.S. at 645, 117 S. Ct. at 1588-89.  Since that decision was rendered, the Second Circuit has interpreted it to differentiate between those cases involving challenges to disciplinary penalties that only affect the conditions of an

inmate's confinement – including disciplinary segregation such as keeplock and SHU confinement – and those involving imposition of sanctions impacting upon an inmate's good-time credits, and thus the length of his or her confinement.  *Jenkins v. Haubert*, 179 F.3d 19, 22-23 (2d Cir. 1999).  Applying *Balisok*, the Second Circuit concluded in *Jenkins* that a plaintiff challenging only the conditions of his or her confinement, but where no good time credits were lost as a result of the disciplinary hearing, need not show as a threshold matter that the disciplinary hearing decision and sentence were reversed or invalidated.  *Id.* at 27.  Since the plaintiff in *Jenkins* was not attacking the fact or length of his confinement, either directly or indirectly, it was found not to be necessary for him to invalidate the prison hearing officer's judgment against him prior to bringing a section 1983 claim for damages.  *Id.*

The disciplinary hearing at issue in this case resulted in both the recommended loss of good time credits, potentially affecting the duration of the plaintiff's prison term, and punishment affecting the conditions of his confinement.  The applicability of *Balisok* to this type of not–uncommon "mixed sanction" disciplinary hearing result was the subject of the Second Circuit's analysis in *Peralta v. Vasquez*, 467 F.3d 98 (2d Cir. 2006).  In

*Peralta* the court noted the tension between *Balisok,* as it applies to sanctions which implicate the term of a prisoner's incarceration, and the premise that under section 1983 a prison inmate may challenge the conditions of his or her confinement, holding that an inmate may commence a section 1983 action for damages growing out of a disciplinary hearing resulting in such a mixed sanction circumstance only if first agreeing to forfeit any claim regarding the portion of the sanctions effecting the length of his or her imprisonment.  *Peralta,* 467 F.3d at 104; *see also Britt v. Fawcett*, No. 9:06-CV-633 (LES), 2009 WL 890631, at *5 (N.D.N.Y. March 31, 2009).

The applicability of *Balisok* and *Peralta* to the facts of this case is unclear from the record now before the court.  As was previously noted, plaintiff did receive a sanction which included both a recommended loss of good time credits and SHU confinement following his disciplinary hearing, though the record does not disclose whether the recommendation ripened into an actual good time credit deprivation.  As a result of various Article 78 proceedings commenced in Albany and Clinton County, and a dispute over whether plaintiff received a complete tape recording of the Tier III disciplinary hearing, Johnson was permitted to file a new administrative

appeal from the hearing officer's determination.  The record lacks any
information, however, as to whether such an appeal was filed, and if so,
the result.  Also absent from the record is an indication of whether, in
pursuing his section 1983 claim growing out of the hearing officer's
determination, plaintiff acknowledges that he is relinquishing his right in
the future to challenge any good time credit loss growing out of that
disciplinary proceeding through appropriate avenues.

   Under these circumstances the court is not presently positioned to
make a finding that plaintiff's claims in this action are barred by *Balisok*.
*See Britt*, 2009 WL 890631, at 5.  Accordingly, I recommend that this
portion of defendants' motion be denied, without prejudice.

   F.    Merits Of Plaintiff's Procedural Due Process Claims

   Plaintiff's sixth and seventh claims focus upon his Tier III disciplinary
hearing.  Amended Complaint (Dkt. No. 5) ¶¶ 67, 68.  In his sixth cause of
action, plaintiff alleges that defendant Shemkunis gave misleading
testimony at the hearing.  *Id.* ¶ 67.  Plaintiff's seventh accuses defendant
Harvey, the hearing officer, of bias.  *Id.* ¶ 68.  Defendants seek dismissal
of both of these claims on the merits.

   To successfully state a claim under 42 U.S.C. § 1983 for the denial

39

of procedural due process arising out of a disciplinary hearing, a plaintiff

must show that he or she 1) possessed an actual liberty interest, and 2)

was deprived of that interest without being afforded sufficient procedural

safeguards. *See Tellier v. Fields*, 260 F.3d 69, 79-80 (2d Cir. 2000)

(citations omitted); *Hynes v. Squillace*, 143 F.3d at 658; *Bedoya v.

Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996).  In their motion, defendants

seemingly acknowledge that disciplinary SHU confinement for a period of

four hundred and fifty-six days represents a constitutionally significant

deprivation sufficient to trigger the due process requirements of the

Fourteenth Amendment. *See Colon v. Howard*, 215 F.3d 227, 231-32 (2d

Cir. 2000). Defendants argue, nonetheless, that based upon the record

now before it the court is positioned to find as a matter of law that the

plaintiff received the requisite, constitutionally mandated level of

procedural safeguards.

The procedural protections to which a prison inmate is entitled

before being deprived of a constitutionally cognizable liberty interest are

well established, the contours of the required protections having been

articulated in *Wolff v. McDonnell*, 418 U.S. 539, 563-67, 94 S. Ct. 2963,

2978-80 (1974).  Under *Wolff*, the constitutionally mandated due process

requirements include 1) written notice of the charges; 2) the opportunity to appear at a disciplinary hearing and present witnesses and evidence, subject to legitimate safety and penological concerns; 3) a written statement by the hearing officer explaining his or her decision and the reasons for the action being taken; and 4) in some circumstances, the right to assistance in preparing a defense.  *Wolff*, 418 U.S. at 564-70, 94 S. Ct. at 2978-83, 94 S. Ct. at 2978-80; *see also Eng v. Coughlin*, 858 F.2d 889, 897-98 (2d Cir. 1988)

A claim that false testimony was given at a disciplinary hearing does not support a constitutional claim under section 1983.  *Phillips v. Goord*, 08-cv-0957, 2009 WL 909593 (W.D.N.Y. April 1, 2009).  In reviewing the evidence which was before the hearing officer, the court's function is merely to determine whether the determination was supported by "some evidence".  *Superintendent v. Hill,* 472 U.S. 445, 455, 105 S. Ct. 2768, 2774 (1985).  This standard has been described as considerably tolerant. *See Friedl v. City of New York,* 210 F.3d 79, 85 (2d Cir. 2000).  To be sure, the "some evidence standard" requires that at least some "reliable evidence" be contained in the record supporting the hearing officer's determination.  *Sira v. Morton,* 380 F.3d 57, 69 (2d Cir. 2004) (*quoting*,

41

*inter alia*, *Luna v. Pico*, 356 F.3d 356, 490 (2d Cir. 2004)).  Based upon the court's review of the hearing transcript, I conclude no reasonable factfinder could determine that the hearing officer's finding is not based upon "some evidence".

Plaintiff also asserts that when presiding over his Tier II disciplinary proceeding, Hearing Officer Harvey was not impartial.  To be sure, bias on the part of a disciplinary hearing officer can support a claim of procedural due process deprivation under the Fourteenth Amendment.  *Davidson v. Capuano*, No. 78 Civ. 5724, 1988 WL 68189 at *8 (S.D.N.Y. June 16, 1988)(citing *McCann v. Coughlin*, 698 F.2d 112, 122 (2d Cir. 1983)).  Here, again, the inquiry focuses on whether plaintiff was afforded basic due process.  *See  Wright v. Conway*, 584 F.Supp. 2d 604, 609 (W.D.N.Y. 2009).

 A hearing officer is entitled to exercise discretion to keep the hearing within reasonable limits.  *Id*.  (quoting *Wolff*, 418 U.S. at 566, 94 S. Ct. 2963)(quotations omitted).  "[T]he right of an inmate to call witnesses and to present evidence is not absolute. . . ."  *Id.* The undisputed evidence shows that Harvey fairly conducted the hearing, and that plaintiff was provided ample due process with respect the disciplinary

42

proceeding.  *See generally*, Plaintiff's Statement of Material Fact Pursuant to Rule 7.1 (Dkt. 70).  The hearing took place over a period of three days.  Plaintiff was permitted to call witnesses, including a mental health professional, presumably to support his defense that he was not guilty by means of metal defect.  At his request, at the hearing plaintiff was provided photographs of the incident.  In addition, prior to the close of the hearing Harvey conducted confidential questioning of plaintiff in order to assess his mental health.  Relying solely upon his dissatisfaction with the results (as well the testimony of his own mental health expert), plaintiff's assertion that Harvey was biased is based on nothing more than plaintiff's own subjective belief that Harvey had prejudged his guilt.  Plaintiff's claim that the hearing officer excluded evidence viewed by the plaintiff as exculpatory is equally without basis in the record.

To the extent that plaintiff's claim of Harvey's bias implicates an insufficient basis for his finding, I have already concluded that the evidence of plaintiff's guilt more than meets the some evidence standard.  "[A] plaintiff armed with nothing more than conclusory allegations of bias and prejudgment should not be able to defeat a well-supported motion for summary judgment."  *Francis v. Coughlin*, 891 F.2d 43, 37 (2d Cir. 1989).

Accordingly, plaintiff's bare allegations, without evidentiary support, are insufficient to establish a claim of hearing officer bias sufficient to withstand defendants' motion for summary judgment.  *Id.*

In light of the lack of evidence in the record demonstrating that plaintiff's procedural due process rights were violated during the course of his disciplinary hearing, I recommend dismissal of his sixth and seventh causes of action.

### G.   Due  Process Claim Surrounding Delay in Providing Tape Recording

Plaintiff's eighth and ninth causes of action surround the alleged delay in providing him with a complete copy of the tape recording made at his disciplinary proceeding.  Amended Complaint (Dkt. No. 5) ¶¶ 8-9. Noting that this claim has been extensively litigated and withdrawn by the plaintiff – at least in part – defendants seek dismissal of these causes of action as well.

Plaintiff's complaint regarding the alleged incompleteness of the tape recording that he received of his disciplinary hearing has been the focus of significant prior litigation.[10]  Plaintiff commenced an Article 78

---

[10]      It should be noted that in addition to being provided with a tape recording of the proceeding, plaintiff has received a certified copy of the transcript of the entire hearing.  Plaintiff's Deposition Transcript (Dkt. 65-13) p. 101.

proceeding Albany County Supreme Court addressing the tape issue.

While neither plaintiff nor defendants have provided the court with detailed

information regarding those proceedings, I have obtained from those

courts certain records regarding them.  A review of those records reflects

that plaintiff was not prejudiced by the delay of prison officials in providing

him with a tape.  Supreme Court Justice Edward A. Sheridan issued a

decision on January 27, 2005 vacating an administrative appeal

determination in connection with plaintiff's disciplinary proceedings,

requiring that plaintiff be provided with a  complete hearing tape, and

ordering that in the event of a failure to provide plaintiff with the requested

recovery, all references to the disciplinary proceeding be expunged from

Johnson's records.  *Mtr. of Johnson v. Goord*, *et. al.*, Albany County

Supreme Court, Index No. 3223-04, Decision and Order, dated January

27, 2005, p. 4.

The matter was the subject of a further proceeding in Clinton

County, resulting in a decision by acting Supreme Court Justice S. Peter

Feldstein dated October 2, 2006.  *Mtr. of Johnson v. Goord*, *et. al.*, Albany

County Supreme Court, Index No. 3224-04, Decision, Order and

Judgment, dated October 11, 2006.  In his decision Judge Feldstein found

that "it is clear that the petitioner has been provided access, albeit belatedly, to a complete audio tape of the underlying Tier III Superintendent's Hearing which tape has been compared with and found identical to the existing transcript."[11]  *See id.,* Slip Op. *at 7.*  Judge Feldstein thus authorized plaintiff to submit a new administrative appeal from the underlying determination, and concluded that if upheld, the determination should result in a penalty limited to a recommended loss of good time credits not to exceed six months.  *Id.*

Under these circumstances it is abundantly clear that plaintiff's claims concerning the missing tape have been litigated and resolved on the merits, thus forming the basis for issue preclusion, *see McKithen*, 481 F.3d at 105.  In addition, it is established that plaintiff has suffered no constitutional deprivation as a result of the alleged failure of prison officials to provide him with a complete tape recording.  I therefore recommend dismissal of these claims as well.

H.    Prison Account Claims

---

[11]    Although unreported, the judicial documents and official court records associated with those proceedings, as publically available documents, are properly considered by the court and entitled to judicial notice in connection with this proceeding. *See* Federal Rules of Evidence 201 and 1005; *see also*, *Wilson v. Limited Brands, Inc.,* 08 CV 3431, 2009 WL 1069165 at *1 n. 1 (S.D.N.Y. April 17, 2009).

Plaintiff's tenth through fourteenth causes of action center upon efforts to enforce an award of costs from the state courts by removing money from his prison account.  Amended Complaint (Dkt. No. 5) ¶¶ 71-75.  In their motion, defendants similarly seek dismissal of these claims.

The only potential cognizable constitutional claim which plaintiff could assert with regard to removal of monies from his prison account would be under the Fourteenth Amendment, arguing that the deprivation was without his having been afforded procedural due process.  The award of costs, however, was the result of a court determination after plaintiff was afforded a full and fair opportunity to be heard regarding the matter. In a letter decision dated March 15, 2006, an Albany County Supreme Court justice dismissed an Article 78 proceeding (Index No. 3223-04), and found "[i]n view of the petitioner's repeated meritless filings regarding the issue of costs in this proceeding, respondent is granted costs of $100." Consideration of this issue is therefore precluded by the doctrine of collateral estoppel.  *McKithen*, 481 F.3d at 105.  Moreover, under these circumstances, plaintiff is unable to point to a deprivation of procedural due process, and his claims related to the removal of monies from his prison account are therefore wholly lacking in merit.  *See Lindsey v.*

*Vaughn*, No. Civ. A. 93-2030, 2001 WL 1132409 at *2 (E.D. Pa. 2001)(citing, *inter alia*, *Marks v. Calendine*, 80 F.R.D. 24 (N.D. W. Va. 1978)(finding the underlying claim to be essentially without merit and imposing costs to ensure that prisoners are dissuaded from bringing vexatious claims)).

> I.      Lack of Personal Involvement

Plaintiff's fifteenth and final cause of action names Deputy Superintendent Turner, Donald Selksy, Commissioner Goord, as well as DOCS and the State of New York, alleging their failure to properly supervise and train prison employees to avoid abuses.  Amended Complaint (Dkt. No. 5) ¶ 76.  Such an independent claim of negligent supervision against the DOCS, its Commissioner, and other prison officials is not cognizable under section 1983.  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional violations is a prerequisite to an award of damages under § 1983'")(quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991)).

It is true that supervisory liability for specific constitutional deprivations can lie under certain circumstances.  Culpability on the part

of a supervisory official for a civil rights violation can be established in one

of several ways, including when that individual 1) has directly participated

in the challenged conduct; 2) after learning of the violation through a

report or appeal, has failed to remedy the wrong; 3) created or allowed to

continue a policy or custom under which unconstitutional practices

occurred; 4) was grossly negligent in managing the subordinates who

caused the unlawful event; or 5) failed to act on information indicating that

unconstitutional acts were occurring.  *Iqbal v. Hasty*, 490 F.3d 143, 152-

53 (2d Cir. 2007); *see also Richardson v. Goord*, 347 F.3d 341, 435 (2d

Cir. 2003); *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-

24 (2d Cir. 1986).

Rather than providing an independent basis for a cause of action,

supervisory liability on the part of any of the defendants is more

appropriately considered in the context of each of the substantive

constitutional claims raised in the case.  Since I have recommended

dismissal of each of those claims, there is therefore no basis to find

supervisory liability in connection with any of them.  *See Davidson v.*

*Capuano*, 78 Civ. 5724, 1998 WL 68189, *16 (S.D.N.Y. June 16, 1988).  I

therefore recommend dismissal of plaintiff's remaining cause of action as

well.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

Plaintiff's complaint in this action, which follows extensive litigation in the state courts regarding many of the matters now in issue, asserts a broad array of constitutional claims stemming primarily from his attempt to commit suicide and the medical treatment and disciplinary proceedings arising out of the incident.  Having carefully analyzed each of plaintiff's fifteen causes of action in this case, I find that many are precluded by virtue of those state court proceedings, others are procedurally barred based upon his failure to exhaust available administrative remedies before commencing suit, and the balance are lacking in merit.  Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 65) be GRANTED, and that plaintiff's complaint be DISMISSED in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d),

72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

Report and Recommendation upon the parties in accordance with this

court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      May 11, 2009
            Syracuse, NY